UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| LINDA SUE BELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 16-cv-1250-JES-JEH |
| HELP AT HOME, INC. n/k/a HELP AT HOME, LLC, | ) ) ) ) |
| Defendant. | ) ) |

# ORDER AND OPINION

Now before the Court is Defendant's Motion for Summary Judgment (Doc. 48). Defendant filed a supporting Memorandum (Doc. 49), Plaintiff has filed a Response (Doc. 56), and Defendant has filed a Reply (Doc. 57). For the reasons set forth below, Defendant's Motion (Doc. 48) is GRANTED.

### BACKGROUND

Plaintiff is a Japanese-American former home care worker who worked for Help at Home from January 5, 2012 until her firing on February 22, 2012. She has alleged that Defendant discriminated against her in work assignments and ultimately fired her because of her race, national origin, and in retaliation for reporting discrimination, in violation of Title VII of the Civil Rights Act of 1964. Doc. 26, pp. 2, 7. Plaintiff has not filed a Response to Defendant's Motion for Summary Judgment that complies with Local Rules—she has not specified which of Defendant's numbered factual assertions in the Motion are disputed and which are undisputed. *See* Doc. 56; Local Rule 7.1(D)(2)(b). In an attempt to construe her pro se filing liberally, the Court will take her Response's assertions of fact that contradict Defendant's as disputed, but the Court "assumes the facts as claimed and supported by admissible evidence submitted by the

moving party" where the Plaintiff is silent on the status of those assertions. *Brettler v. Purdue University*, 408 F. Supp. 2d 640, 645, n.2 (N.D. Ind. 2006); *see also Greer v. Board of Education of City of Chicago, Illinois*, 267 F.3d 723, 727 (7th Cir. 2001) (upholding district court grant of summary judgment that "charitably parsed the record for evidence of discrimination or retaliation" when a pro se litigant likewise failed to comply with Local Rules on summary judgment responses).

**Undisputed Facts**

Help at Home provides personal living assistance services to seniors and people with disabilities. Doc. 49, p. 3. The Pekin branch, where Plaintiff was employed, serves clients in Tazewell, Peoria, Marshall, Stark, Wood, and Fulton counties. *Id.* Help at Home merged with Omega Healthcare in December 2011. *Id*. at 4. Help at Home hired 23 Omega employees, including Plaintiff. *Id.* Six of those employees were white and seventeen were minorities. *Id.* Plaintiff attended an orientation meeting with other employees on January 5, 2012. *Id*. Help at Home's Pekin branch manager, Candace Lohnes, conducted the orientation meeting. *Id.* at 6. On January 12, 2012, Plaintiff sent a letter to Help at Home's CEO, Ron Ford, alleging that Ms. Lohnes had said at the orientation, "I know we're not supposed to discriminate, but I'm here to tell you we do. Pekin is a very prejudiced town. We do it to protect you, the employee, and the client." *Id*. Ms. Lohnes denies saying this. *Id*. Plaintiff ended that letter by noting that she did not want Ms. Lohnes to get in trouble, and that Ms. Lohnes seemed like a nice person who cares about people. *Id.* Plaintiff spoke on the phone with Mr. Ford the next day, and Mr. Ford assured Plaintiff she would not be retaliated against for reporting her concerns about Ms. Lohnes. *Id.*; Doc. 56, p. 3. Plaintiff raised no further internal concerns with Help at Home about racial discrimination. Doc. 49, p. 6.

Staffing supervisors at Help at Home allocate work to employees based on a number of factors including the employee's hours of availability, geographic location, and seniority. *Id*. at 3. The employees are not guaranteed that they will be assigned any given number of hours per week, and Plaintiff signed a document on January 5, 2012 indicating understanding of that policy. *Id.*; Doc. 49, Exh. E. When new employees were brought on to Help at Home, they underwent a 90-day probationary period during which time they did not receive the benefits of their seniority and could be terminated without cause. *Id*. All incoming Omega employees were paid at a $10.05/hour rate until they completed the probationary period. *Id.* Employees who worked an average of 20 or more hours per week and successfully completed the probationary period would have access to certain benefits like vacation time that others would not. *Id.*; Doc. 49, Exh. I. Plaintiff did not have any clients at Omega when the merger occurred, and so she did not have any clients when her employment at Help at Home began. *Id.* Only one other transferring employee did not bring any clients over. *Id.* at 5.

Plaintiff submitted a work request form on January 5, 2012 that stated her preference to work only in Pekin, South Pekin, and Manito. *Id*. at 6; Doc. 49, Exh. G. Between January 16 and February 22, Plaintiff was offered work for seven clients (some of this work was temporary to fill in for other employees) and turned down one offer because it was too far to drive without gas reimbursement. *Id.* at 7. During approximately the same time period, the Pekin branch received about 45 new clients total, almost all of whom came from the Omega merger and were already assigned to a former Omega employee. *Id.* at 5. Additionally, from January 2012 to May 2012, 35 of 79 white employees met or crossed the 20-hour average threshold (44.3%) and 17 of 42 minority employees did the same (40.5%). Doc. 49, Exhs. D, 3.

On February 17, 2012, Ms. Lohnes learned that Plaintiff had discussed potential problems with clients with another Help at Home employee, Tamika Virgil. *Id.* at 8. Plaintiff had claimed that the regular home care worker for one of her clients was paying a different person to provide services to the client. *Id*. Ms. Lohnes visited that client, who said that allegation was untrue—the client did pay her neighbor to deliver her food sometimes, but the home care worker was not paying someone else to provide the worker's servicers. *Id.* That client further stated that Plaintiff had made a mistake in her food order, costing her five extra dollars. *Id.* Ms. Lohnes learned from Ms. Virgil that Plaintiff had also alleged a regular home care worker was drinking beer with a client at night, but both the client and the regular home care worker denied doing so. *Id.* On February 20, 2012, Ms. Lohnes met with Plaintiff and told her she was breaching the clients' confidentiality by discussing these matters with anyone other than the appropriate office staff. *Id.* On February 21, 2012, Ms. Lohnes discussed the matter with the Regional Vice President of Help at Home, and they agreed that Plaintiff should be fired. *Id.* Plaintiff was terminated on February 22, 2012. *Id.* at 9. Ms. Lohnes had previously terminated other employees during their probationary periods for conduct, and she has terminated other white employees for breaches of privacy. *Id.*

On March 5, 2012, Plaintiff filed a discrimination charge with the EEOC and the Illinois Department of Human Rights. *Id*. at 2. The EEOC issued her a Notice of Right to Sue on April 15, 2016, which said "The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you." *Id*. at 2; Doc. 49, Exh. B; Doc. 56, p. 5. Plaintiff filed her initial Complaint in this case on July 6, 2016. Doc. 1. The Amended Complaint now at issue is her third, and it was filed on August 7, 2017. Doc. 26.

**Disputed Facts**

According to Plaintiff, at the Help at Home orientation for former Omega employees on January 5, 2012, Ms. Lohnes stated "I know we are not supposed to discriminate but I am here to tell you we do. Pekin is a very prejudice [sic] town, and we do this to protect the client and you." Doc. 56, p. 3. Plaintiff claims that Ms. Lohnes made this statement in the context of explaining the portion of the company handbook addressing equal opportunity. *Id.* Plaintiff recalls that Ms. Lohnes then gave the employees detailed instructions on what route they should take to drive home; Ms. Lohnes had alerted local law enforcement that a number of non-white employees would be coming into town, so anyone who got stopped by police should let them know they were just returning from the Help at Home orientation. *Id.* After she filed her EEOC charge, Plaintiff received a call from a coworker requesting that she sign a document prepared by Ms. Lohnes that indicated she was not offended by the statements Ms. Lohnes made at the orientation. *Id.* According to Plaintiff, Ms. Lohnes "continually" reminded her that she had a daughter working for the Tazewell County Sheriff and the East Peoria Police Department. *Id.* Plaintiff claims that she had never been reprimanded before her termination, although in her deposition, she agreed that Ms. Lohnes spoke to her two days before her termination about client confidentiality. *Id.*; Doc. 49, Exh. C, p. 156.

In support of her Response, Plaintiff attached a letter from the Illinois Department of Employment Security. *Id.* at 4. That letter stated that the evidence showed Plaintiff was discharged because she filed a grievance against Help at Home for discrimination, although it also noted that the employer failed to provide "any information" to the Department. *Id.* Plaintiff also attached the EEOC Notice of Right to Sue, which stated that the EEOC "found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the

matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you." *Id.* at 5.

Defendant contends that all components of the filing should be stricken for failing to comply with the Local Rules and because the supporting letters are inadmissible hearsay. Apparently because Plaintiff's Response had no numbered or clearly labeled fact section for Defendant's Reply to address, Defendant does not indicate in the Reply whether any additional allegations of fact by Plaintiff are disputed. Doc. 57. As discussed below, even if the Court accepts Plaintiff's assertions as undisputed, Defendant has established that it is entitled to judgment as a matter of law.

## LEGAL STANDARD

Summary judgment is proper where the materials in the record demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The role of the judge in resolving a motion for summary judgment is not to weigh the evidence for its truth but to determine whether sufficient evidence exists that a jury could return a verdict in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Thus, in order to survive a motion for summary judgment, the non-movant must show specific facts that demonstrate the existence of genuine issues for trial. *Id.* The Court will construe the record "in the light most favorable to the non-movant" in deciding whether the case involves genuine issues of fact requiring a trial. *Payne v. Pauley*, 337 F.2d 767, 770 (7th Cir. 2003). However, mere allegations in the complaint by a non-movant plaintiff will not suffice; instead, they must show admissible evidence such as depositions that show genuine disputes of material fact. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *Greer*, 267

F.3d at 729 ("[A] party cannot defeat summary judgment by relying on unsubstantiated assertions.")

To prevail on summary judgment in an employment discrimination claim under Title VII, a plaintiff must present evidence that would allow a reasonable finder of fact to conclude that the defendant took a materially adverse employment action against her because of her race, color, religion, sex, or national origin. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Courts often use the *McDonnell Douglas* burden-shifting framework to organize the evidence, although the evidence must ultimately be considered as a whole in deciding the summary judgment motion. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Under the *McDonnell Douglas* framework, plaintiff must make a *prima facie* case of discrimination. *McDonnell*, 411 U.S. at 802. Having done so, the burden shifts to the employer to point to some nondiscriminatory reason for the adverse employment action. *Id*. Where the employer meets that burden, plaintiffs must show that the employer's reasons are a pretext for discrimination or that the decision was corrupted by race-based motives. *See Johnson v. Cambridge Industries, Inc.*, 325 F.3d 892, 897 (7th Cir. 2003). If the evidence, considered as a whole, would permit a reasonable factfinder to conclude that Plaintiff's race caused the adverse employment action, then summary judgment for Defendant should be denied. *See Ortiz*, 834 F.3d at 765.

Similarly, a plaintiff bringing a Title VII retaliation claim must show that she 1. engaged in an activity protected under the statute and 2. suffered an adverse employment action as a result of that protected activity. *See Owens v. Old Wisconsin Sausage Co., Inc.*, 870 F.3d 662, 668 (7th Cir. 2017). Protected activities include steps taken in opposition to a form of Title VII discrimination, where the employee had a good-faith basis for believing that the conduct he

opposed was unlawful. *See id.* Pursuant to *Ortiz*, the evidence is taken as a whole, rather than sorted into "direct" and "indirect" categories, but the *McDonnell* burden-shifting framework remains; if the employer can show a nondiscriminatory reason for the challenged action, then the burden returns to the employee to show that that reason is a pretext. *See Ferrill v. Oak Creek-Franklin Joint School Dist.*, 860 F.3d 494, 500 (7th Cir. 2017).

## DISCUSSION

**1. The Racial Discrimination Claim**

Plaintiff has failed to establish that Help at Home discriminated against her because of her race. In her Complaint, she alleged that Help at Home discriminated against her by firing her, failing to promote her, failing to stop harassment, retaliating against her for complaining about the racial discrimination, intimidating her, and discriminating with respect to the compensation, terms, conditions, or privileges of employment. Doc. 26, p. 5. However, she has provided no evidentiary support in her Response for her contention that she was terminated because of her race—to the contrary, when asked at her deposition "Do you believe that Help at Home terminated your employment because of your race?" Plaintiff responded "No, but it's—no." Doc. 49, Exh. C, p. 30.

Plaintiff further argued that Help at Home did not provide non-white employees the same opportunities (promotions, higher wages, seniority, vacation time, and other benefits) as white employees because all of those opportunities required that employees work an average of 20 hours or more per week. *Id*. at 63. According to Plaintiff, she could not reach the 20-hour threshold despite her exemplary work record because Help at Home did not give as many assignments to non-white employees such as Plaintiff. Doc. 26, p. 7; Doc. 49, Exh. C, p. 63.

8

However, Plaintiff has provided no support for this contention other than her assertions.[1] Defendant has provided data on its employees that shows substantially the same proportion of non-white employees crossed the 20-hour threshold as white employees (40.5% and 44.3%, respectively). Doc. 49, Exh. 3. Additionally, with respect to Plaintiff specifically, Defendant has shown that Plaintiff had trouble meeting 20 hours per week because she did not bring any clients over from Omega and because she would only work within a limited geographic region; she was offered work for seven clients during her brief period of employment at Help at Home, and she turned down one of these assignments because it was too far to drive without mileage reimbursement. Doc. 49, Exh. C, p. 107. During the same period, her branch of Help at Home received about 45 new clients to distribute among over a hundred employees. Doc. 49, Exh. D. While Plaintiff has demonstrated that she had difficulty seeking promotions and various other benefits that accompany working a certain number of hours per week, she has provided no evidence that the allocation of assignments was based on race. Given the evidence that Defendant has presented to the contrary, no reasonable fact-finder could conclude that Defendant had a discriminatory purpose in assigning the amount of work it did to Plaintiff. *See Terry v. Gary Community School Corporation*, 910 F.3d 1000, 1005–06 (7th Cir. 2018) (affirming denial of summary judgment where plaintiff "did not marshal any evidence to raise a factual dispute that the District had a discriminatory purpose" for their action).

Plaintiff's Complaint indicates that Defendant discriminated against her in a number of other ways (failing to stop harassment, retaliating against her for complaining about the racial discrimination, intimidating her), but she does not elaborate on these claims or provide any

---

[1] The Court does not consider the EEOC notice and the unemployment benefits letter attached by Plaintiff as evidence supporting her allegations—the EEOC letter contains only a conclusion with no particular factual findings, and the unemployment benefits letter explicitly states that the agency received only Plaintiff's allegations and no information from her employer. These documents are therefore not probative.

support for them in her Response. Doc. 56. Additionally, Defendant attached a deposition in which Plaintiff stated that the intimidation and coercion she charged was unrelated to her race. Doc. 49, Exh. C, p. 67 ("The question on H has nothing to do with the race."). Without any evidence on the record to support her contention that these actions were based on her race, Plaintiff's remaining racial discrimination claims do not survive summary judgment.[2]

## 2. The Retaliation Claim

The parties in this case agree that Plaintiff filed a charge of discrimination with the EEOC and that she was fired, but not that Plaintiff's filing of the charge caused her firing. Plaintiff alleged in her EEOC charge that she complained about discriminatory case assignment procedures and was subsequently discharged "for engaging in protected activity." Doc. 26, p. 11. She attached a letter to her Complaint written by her coworker Ms. Virgil, which stated "I don't know if [Plaintiff's termination] was because of the grievance filed or the fact that she is White/Asian. She was terminated for no reason." Doc. 26, p. 10. However, Plaintiff referenced neither of these in her Response. Instead, she asserted that she sent a letter to the Help at Home CEO raising concerns about their discrimination policies, that the filed a charge with the EEOC, that Ms. Lohnes prepared a document for her to sign stating that she wasn't offended by Ms. Lohnes' statements at orientation, and that she was subsequently fired. Doc. 56, p. 3. Plaintiff's Response provided no evidence in support of any of these assertions. The timing of her termination, without any other evidence supporting the causal link, "is not enough to create a dispute of material fact." *Terry*, 910 F.3d at 1008.

---

[2] The Court notes that Plaintiff has had ample time to procure evidence supporting her claim. Her Third Amended Complaint was filed in August 2017, and discovery lasted through November 2018, after several extensions. Defendant filed this Motion for Summary Judgment on December 3, 2018, in compliance with the scheduling order, and Plaintiff was granted two extensions of time to respond, which she ultimately did on February 11, 2019. The 109 pages of exhibits offered by Defendant in their Memorandum (Doc. 49) in Support of their Motion suggest that Plaintiff had access to employee records, her own letter to the CEO, and numerous other materials that she did not attach to or mention in her Response.

Defendant, on the other hand, provided some of the evidence referenced by Plaintiff, such as her letter to the Help at Home CEO. Doc. 49, Exh. J. That letter describes Plaintiff's allegations about Ms. Lohnes' statements at orientation, including that "I know we're not supposed to discriminate, but I'm here to tell you we do." *Id*. The letter goes on to state "I believe Candace Lohnes was just being honest about Pekin, IL and I did not feel any wrongdoing on her part." *Id*. Even to the extent that the letter could be interpreted as a grievance for racial discrimination, Defendant provided ample evidence that the reason for Plaintiff's termination had nothing to do with race, her letter to the CEO, or her EEOC grievance.[3]

Defendant argues that Plaintiff was not terminated for the reasons she claims—rather, she was terminated during her probationary period because she breached clients' confidentiality by discussing their cases with other employees, she made false complaints against other employees, and she irritated clients. Doc. 49, p. 9. In support of this, Defendant provided an affidavit from Ms. Lohnes, employee records documenting investigations into Plaintiff's comments, and a deposition of Plaintiff wherein Plaintiff confirmed that she spoke to Ms. Virgil about clients' relationships with their usual home care workers. Doc. 49, Exhs. C, D, 2. According to Ms. Lohnes, she reported Plaintiff's breaches of confidentiality and false complaints about other home care workers to the corporate office, and she and Ms. Newbern agreed that Plaintiff should be fired. Doc. 49, Exh. D, pp. 8–9. Ms. Lohnes contends that she has fired white employees for the same reasons, including one on October 15, 2013. *Id*. at 9.

Because Plaintiff failed to respond to these arguments or present any evidence supporting her contrary claim, the Court determines that no reasonable juror could find in her favor on the retaliation claim. She did not show that she suffered any adverse action in retaliation for her

---

[3] Plaintiff filed her grievance in March 2012, about a month after she was fired. Doc. 26, p. 11; Doc. 49, Exh. C, p. 52. The EEOC charge could therefore not have caused her February 22, 2012 termination.

letter to the CEO or her other complaints. Instead, her own statements support the Defendant's contention that she was dismissed for discussing client matters with other employees. The Court therefore grants Defendant's Motion for Summary Judgment on the retaliation claim as well.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 48) for Summary Judgment is GRANTED. This matter is now terminated.

Signed on this 8th day of March, 2019.

/s James E. Shadid
James E. Shadid
Chief United States District Judge